HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NOLBERTO BRAMBILA SANCHEZ,<br><br>Petitioner,<br><br>v.<br><br>BRUCE SCOTT, Warden, Northwest ICE Processing Center, *et al.*,<br><br>Respondents. | CASE NO. 2:26-cv- 00948-RAJ<br><br>ORDER GRANTING HABEAS PETITION<br><br>**PROVISIONALLY FILED UNDER SEAL**[1] |

[1] Because the Court references exhibits in this Order that the parties have moved to seal, the Court has provisionally filed this Order under seal. If any party believes that this Order, or a portion thereof, should remain under seal, that party shall file, within **fourteen (14) days** of the entry of this Order, a motion justifying the continued sealing of this Order under the appropriate standards set forth in the Local Civil Rules and applicable Ninth Circuit authority. If neither party files such a motion, the Court will unseal this Order.

## I. INTRODUCTION

THIS MATTER comes before the Court on the Petition for Writ of Habeas Corpus (the "Petition," Dkt. # 1) filed by Petitioner Nolberto Brambila Sanchez, who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. The federal Respondent is Markwayne Mullin (Secretary of the U.S. Department of Homeland Security ("DHS")).[2]

The Court has reviewed the Petition, the submissions in support of and in opposition to the Petition, and the balance of the record. For the reasons set forth below, the Court **GRANTS** Mr. Brambila Sanchez's Petition. The Court also **GRANTS** the parties' Joint Motion to Seal Bond Hearing Exhibits (the "Motion to Seal," Dkt. # 11), subject to Respondent's revisions to the redacted documents identified in this Order.

## II. BACKGROUND

Petitioner Nolberto Brambila Sanchez is a 42-year-old citizen of Mexico. Dkt. # 1 at 3; Dkt. # 7-9 at 2. Petitioner was initially apprehended by United States Border Patrol ("USBP") in 2000 in Jerome, Idaho, and was granted voluntary departure by an Immigration Judge ("IJ") in Seattle. Dkt. # 7-1; Dkt. # 7-9 at 4. The IJ's order provided that Petitioner's failure to voluntarily depart by the applicable deadline would result in its conversion to an order authorizing Petitioner's removal to Mexico. Dkt. # 7-1 at 2. The Government states that Petitioner never voluntarily departed in compliance with the IJ's order. Dkt. # 7-9 at 4. Approximately nine years later, on July 29, 2009, ICE's Office of Enforcement and Removal Operations ("ERO") encountered Petitioner in Tacoma, WA. *Id.*; Dkt. # 7-6 at 4. According to one of the records submitted by the Government, Petitioner claimed fear of return to Mexico at this time, and ERO referred his case to United

[2] The Petition also names Bruce Scott (Warden of the NWIPC) as a Respondent, but he is not represented by the U.S. Attorney's Office, which filed the Response in this case on behalf of Respondent Mullin. Dkt. # 5 at 1 n.2. Respondent Mullin is substituted for former DHS Secretary Kristi Noem pursuant to Federal Rule of Civil Procedure 25(d). *Id.* at 1 n.1.

The Court refers to Respondent Mullin interchangeably as "the Government" throughout this Order.

States Citizenship and Immigration Services ("USCIS") for a reasonable fear interview, but USCIS never completed the adjudication of Petitioner's reasonable fear case. Dkt. # 12-8 at 4. Nonetheless, ERO removed Petitioner to Mexico on August 5, 2009, through San Ysidro, California. Dkt. # 7-6 at 4; Dkt. # 7-9 at 4. Petitioner subsequently reentered the United States and was arrested by USBP on August 31, 2009 on the basis of his prior order of removal, pursuant to Section 241(a)(5) of the Immigration and Nationality Act ("INA"). Dkt. # 7-6 at 5; Dkt. # 7-9 at 4; Dkt. # 7-2 (Form I-871 Notice of Intent/Decision to Reinstate Prior Order). On September 1, 2009, Petitioner was again removed to Mexico through the Nogales, Arizona port of entry. *See* Dkt. # 7-3 at 3. Petitioner reentered the United States two days later and was re-arrested by USBP in Arizona on September 3, 2009 pursuant to Section 241(a)(5) of the INA. Dkt. # 7-6 at 5; Dkt. # 7-9 at 4; Dkt. # 7-4 (Form I-871)[3]. Petitioner was again removed to Mexico through the Nogales, Arizona port on September 4, 2009. Dkt. # 7-5 at 3.

On November 25, 2020, Petitioner was encountered by ERO in Tacoma; he stated that he had illegally re-entered the United States at an unknown date and without inspection. Dkt. # 7-6 at 5. During this encounter, Petitioner claimed fear of returning to Mexico. Dkt. # 12-8 at 10. He was issued a Form I-871 pursuant to Section 241(a)(5) of the INA based on his prior order of removal entered on August 24, 2000 (consistent with Petitioner's initial deadline to voluntarily depart the United States). Dkt. # 7-7; *see* Dkt. # 7-1 (order granting voluntary departure on or before August 23, 2000, subject to conversion to a removal order upon Petitioner's "fail[ure] to depart as required"). The Government states that Petitioner was "processed as a Reinstatement with Reasonable Fear" based on

[3] The September 1, 2009, Form I-871 submitted by the Government references a prior order of removal entered on October 18, 2002, in Seattle, while the September 4, 2009, Form I-871 references a prior order entered on the same date but in San Ysidro, California. Dkt. ## 7-2, 7-4. The record does not contain or otherwise reference a removal order with this date, and the Government does not explain the discrepancies between these two forms.

his statements during the encounter. Dkt. # 6 ¶ 11; Dkt. # 12-8 at 10. Petitioner was released on an Order of Supervision ("OSUP") the same day. Dkt. # 7-8.

On June, 21, 2025, Seattle ERO sent Petitioner a "call-in letter," instructing him to report in-person to ERO Seattle on July 8, 2025. Dkt. # 7-9 at 3. Petitioner reported to ERO Seattle as instructed. *Id.* The Government's July 8, 2025 Form I-213 provides that, "[d]uring routine system queries, ERO officers discovered" that, at the time USBP issued Petitioner a Reinstatement on July 29, 2009, he had claimed fear of return to Mexico, but that USCIS had ultimately never adjudicated Petitioner's reasonable fear case. Dkt. # 12-8 at 4. During his July 8, 2025 appointment, ERO officers "advised [Petitioner] that he was under arrest to execute his final order of removal to Mexico, pending adjudication of his [reasonable fear] case with USCIS." Dkt. # 7-9 at 2. Petitioner's arrest warrant indicates that the probable cause determination regarding Petitioner's removability was based on "the pendency of ongoing removal proceedings" against Petitioner, as well the results of biometric and records checks indicating that Petitioner "either lacks immigration status or . . . is removable under U.S. immigration law." Dkt. # 7-11. Petitioner was also provided with a Notice of Revocation of Release, which specifies that Petitioner's OSUP was being revoked and Petitioner was being returned to ICE custody "to execute [his] previous removal order." Dkt. # 7-10. The Notice also provides that Petitioner would "promptly be afforded an informal interview" at which he could "respond to the reasons for the revocation." *Id.* at 2. As the Government acknowledges, "the record does not indicate that Petitioner was provided with an informal interview as set forth in the regulations." Dkt. # 5 at 5 (citing C.F.R. § 241.4(l); 8 C.F.R. § 241.13(i)).

On July 14, 2025, ERO referred Petitioner's case to USCIS for the reasonable fear interview. Dkt. # 6 ¶ 14. On July 22, 2025, USCIS conducted the reasonable fear interview. *Id.* ¶ 15. Two days later, USCIS found that that Petitioner had not established a reasonable fear of persecution if returned to Mexico. *Id.* ¶ 16. Petitioner reserved his right to have USCIS' findings reviewed by an IJ. *Id.* On August 12, 2025, the reviewing

IJ at the Tacoma Immigration Court concurred that Petitioner had not established a reasonable possibility of persecution or torture. Dkt. # 7-13. Petitioner filed a Petition for Review ("PFR") of the IJ's order with the Ninth Circuit Court of Appeals the same day, and the Ninth Circuit promptly stayed Petitioner's removal to Mexico pursuant to General Order 6.4(c). *Brambila Sanchez v. Bondi*, No. 25-5086, Dkt. No. 2 (9th Cir. Aug. 12, 2025). The PFR is currently pending in the Ninth Circuit, and Petitioner's stay of removal remains in effect as of the date of this Order.

On January 13, 2026, the Tacoma Immigration Court conducted an *Aleman* bond hearing. Dkt. # 6 ¶ 21; *see Banos v. Asher*, No. 16-cv-1454, 2018 WL 3244988, at *5 (W.D. Wash. Jan. 23, 2018), *report and recommendation adopted*, 2018 WL 1617706 (W.D. Wash. Apr. 4, 2018), *aff'd in part, vacated in part, rev'd in part sub nom. Flores Tejada v. Godfrey*, 954 F.3d 1245 (9th Cir. 2020), *rev'd and remanded sub nom. Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022). At the conclusion of the hearing, the IJ found that Petitioner was a flight risk and denied bond. Dkt. # 7-14.

Petitioner initiated this habeas action on March 20, 2026. Dkt. # 1. Petitioner alleges that: (1) his arrest "was imposed in disregard of ICE's own procedures" and therefore violates due process; and (2) that his detention has become prolonged and "is no longer reasonably related to the purpose of removal." Dkt. # 1 at 12. As such, Petitioner seeks immediate release from immigration detention. *Id*.

## III. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). The district courts' habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may seek habeas relief by showing that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

# IV. DISCUSSION

## A. Petitioner's arrest violated the Due Process Clause.

The Fifth Amendment of the U.S. Constitution forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

In *Mathews*, the Supreme Court set out three considerations for determining whether a particular governmental action comports with due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 334–35.

Due process "applies to all 'persons' within the United States, including [noncitizens], whether their presence here in lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted). In *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), the Ninth Circuit assumed without deciding that the three-part test set forth in *Mathews* applies in the immigration detention context. *Id.* at 1207. District courts have subsequently applied the *Mathews* test in that context. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320–24 & 1321 n.4 (W.D. Wash. 2025) (collecting cases).

The Government does not engage with, or even reference, the *Mathews* test in its response. *See generally* Dkt. # 5. Instead, Respondent curtly argues that "[t]he reinstatement of Petitioner's removal order, and subsequent detention, does not violate due process." *Id.* at 2 (citing *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 497–98 (9th Cir. 2007) for the proposition that "reinstatement meets due process" and *Demore v. Kim*, 538

U.S. 510, 523 (2003) for the proposition that "detention is a constitutionally permissible aspect of the government's enforcement of the immigration laws"). Respondent's framing, however, ignores the fact that Petitioner had previously been released on an OSUP prior to his re-arrest. Courts in this District and others "considering the re-detention of noncitizens previously released on Orders of Supervision" have consistently found that these individuals have "a protected interest in not being detained and [are] owed some process by which to contest their re-detention." *Torres Ferrera v. Scott*, No. 2:26-CV-00583-TL, 2026 WL 776145, at *4 (W.D. Wash. Mar. 19, 2026) (collecting cases). This extends to individuals released on orders of supervision who are subject to reinstated removal orders, as "[t]he fact that a noncitizen has previously been removed and is subject to reinstatement of removal does not except them" from the requirements of due process." *Id.* (citing *Diego Francisco v. Noem*, No. C26-25, 2026 WL 295211, at *3 (W.D. Wash. Feb. 4, 2026)).

The Court therefore turns to each of the *Mathews* factors to assess whether Petitioner's OSUP revocation and re-detention comported with due process.

i. <u>Petitioner has a protected interest in his liberty</u>.

With respect to the first *Mathews* factor, Petitioner's interest in being free from detention is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); see also *Zadvydas*, 533 U.S. at 690. This liberty interest applies to "[i]ndividuals on release, even when such release is conditional." *Reyes v. Hermosillo*, No. 2:26-CV-00270-TLF, 2026 WL 507678, at *3 (W.D. Wash. Feb. 24, 2026) (citing *E.A. T.-B.*, 795 F. Supp. 3d at 1321–22). And, as discussed, the fact that a petitioner is subject to a reinstated order of removal does not undermine this protected liberty interest. *See Torres Ferrera*, 2026 WL 776145, at *4–5 (collecting cases and finding that petitioner subject to reinstatement "had a protected interest in her liberty, the deprivation of which was subject to constitutional limits"). Here, the fact that "the Government allowed Petitioner to remain in the community" for nearly five years after releasing him on supervision "only strengthened his liberty interest." *Diego Francisco*, 2026 WL 295211, at *4 (citing *Tzafir*

*v. Bondi*, No. 2:25-cv-02126-JHC, 2026 WL 81759, at *3 (W.D. Wash. Jan. 12, 2026)). Prior to his re-detention in July 2025, Petitioner avers that he had been "fully complying with ICE supervision requirements since 2021 and maintained lawful employment authorization," an assertion Respondent does not appear to contest. Dkt. # 1 at 3; *see generally* Dkt. # 5. Petitioner established his family and served as an "active caregiver and source of support" for his children (who are U.S. citizens), including "a minor daughter who suffers from significant mental and physical health conditions." Dkt. # 1 at 5. Petitioner has therefore established a strong liberty interest in remaining free from detention, and the first *Mathews* factor accordingly weighs in his favor.

ii. <u>The risk of erroneous deprivation of liberty is high</u>**.**

The second *Mathews* factor requires a court to consider whether the particular procedures used result in a risk of erroneous deprivation of a protected interest, and the probable value, if any, of additional or substitute procedural safeguards. *Mathews*, 424 U.S. at 335. Petitioner argues that, given the Government's failure to "follow their own procedures in effecting Petitioner's detention," the risk of erroneous deprivation is heightened. Dkt. # 1 at 8 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974)).

The applicable regulations provide that ICE may revoke a noncitizen's supervised release if the noncitizen violates the conditions of their release, 8 C.F.R. § 241.13(i)(1), or if a change in circumstances creates a significant likelihood of removal in the reasonably foreseeable future, *id.* § 241.13(i)(2). "Upon revocation" of release, the noncitizen must be notified of the reasons for the revocation and afforded "an initial informal interview promptly after his or her return" to custody to "respond to the reasons for revocation" and "submit any evidence or information" in opposition. *Id.* § 241.13(i)(3); *see also id.* § 241.4(l). The noncitizen's "revocation custody review" is to include "an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.* § 241.13(i)(3).

The Government concedes that Petitioner does not appear to have been afforded the informal interview required by the regulations. Dkt. # 5 at 5. The required procedures set forth in these regulations, including the informal interview, "are intended to provide noncitizens with fundamental due process protections that courts have found to be constitutionally required." *Francisco Lorenzo v. Bondi*, No. 2:25-CV-02660-LK, 2026 WL 237501, at *4 (W.D. Wash. Jan. 29, 2026) (quoting *Hall v. Nessinger*, No. 25-CV-667-JJM-PAS, 2026 WL 18583, at *4 (D.R.I. Jan. 2, 2026)). Accordingly, "ICE violates a noncitizen's due process rights when the agency re-detains [the noncitizen] and fails to comply with these revocation procedures." *Id.* (quoting *Hall*, 2026 WL 18583, at *4). The Court finds that the risk of erroneous deprivation here is significant given that the Government "failed to follow its own procedures for revocation of release, thus depriving the noncitizen of process due prior to revocation." *See Barraza Enriquez v. Mullin*, No. 2:25-CV-02352-LK, 2026 WL 947931, at *6 (W.D. Wash. Apr. 8, 2026) (collecting cases and granting relief after considering assertion in verified petition that Petitioner was denied notice and informal interview required by 8 C.F.R. § 241.4(l)); *Roca v. Scott*, No. 2:25-cv-2552-KKE-SKV, 2026 WL 60412, at *3–4 (W.D. Wash. Jan. 8, 2026) (finding procedural due process violation when Government failed to provide prompt informal interview as required by 8 C.F.R. § 241.13). Accordingly, the second *Mathews* factor also favors Petitioner.

iii. <u>Respondent's interest in re-detaining Petitioner without due process is minimal</u>.

As to the third *Mathews* factor, the Court acknowledges that Government has a heightened interest in the immigration detention context. *Rodriguez Diaz*, 53 F.4th at 1206. However, affording the process required to revoke OSUP is "routine and low cost." *Barraza Enriquez*, 2026 WL 947931, at *7 (quoting *Francisco Lorenzo*, 2026 WL 237501, at *5). Accordingly, the third *Mathews* factor favors Petitioner.

Because all three *Mathews* factors favor Petitioner, the Court finds that Respondent's revocation of Petitioner's OSUP violated his procedural due process rights and that his detention is therefore unlawful.

**B. The IJ's flight risk finding does not provide an independent justification for Petitioner's continued detention.**

The Government submits that, notwithstanding its failure to afford Petitioner an informal interview as required by the regulations governing revocation of OSUP, Petitioner was afforded an "individualized review with substantial procedural protections in place" in the form of his January 13, 2026 bond hearing at the Tacoma Immigration Court. Dkt. # 5 at 8. The Government additionally argues that Petitioner should be required to exhaust his administrative remedies prior to seeking relief through a habeas claim. *Id.* The Court considers each of these arguments.

i. <u>The Court has jurisdiction to review the IJ's bond denial for legal error.</u>

While the Court generally does not have jurisdiction to review discretionary bond decisions, *see* 8 U.S.C. § 1226(e), the Court does have jurisdiction to "review an [immigration judge's] discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional." *Soriano v. Hernandez*, No. 2:26-CV-00900-DGE, 2026 WL 969764, at *3 (W.D. Wash. Apr. 10, 2026) (citing *Kharis v. Sessions*, Case No. 18-cv-04800-JST, 2018 WL 5809432 *4 (N.D. Cal. Nov. 6, 2018)). In this context, mixed questions of law and fact—even if primarily factual—are treated as questions of law. *Martinez v. Clark*, 124 F.4th 775, 782 (9th Cir. 2024).

Here, Petitioner challenges the IJ's flight risk finding as "arbitrary" and unsupported by "articulated reasoning or individualized analysis" and "affirmatively contradict[ed]" by the record. Dkt. # 9 at 4–5. As such, Petitioner avers that his bond hearing did not "constitute meaningful or constitutionally sufficient review." *Id.* at 5. Because Petitioner is challenging "whether the IJ provided him with a bond hearing that comports with the constitutional due process protections to which he is entitled," the Court concludes that it

has subject matter jurisdiction to consider Petitioner's claim. *Soriano*, 2026 WL 969764, at *3 (quoting *W.T.M. v. Bondi*, Case No. 2:25-CV-02428-RAJ-BAT, 2026 WL 262583, at *1 (W.D. Wash. Jan. 30, 2026)).

ii. The Court waives prudential exhaustion requirements.

Respondent submits that, "[i]f Petitioner disagrees with the immigration judge's decision, he should be required to exhaust his administrative remedies" prior to seeking habeas relief. Dkt. # 5 at 8 (citing *Aden v. Nielson*, No. 18-cv-1441, 2019 WL 5802013, at *1–2 (W.D. Wash. Nov. 7, 2019)). The Court agrees with the reasoning of other courts in this District which have assessed prudential exhaustion arguments in the context of similar challenges to IJ bond denials. *See, e.g.*, *Soriano*, 2026 WL 969764, at *3–4; *Vasquez Lopez v. Hernandez*, No. C26-0775 TSZ, 2026 WL 984151, at *2 (W.D. Wash. Apr. 13, 2026); *Soto Gimenez v. Hernandez*, No. 2:26-CV-00966-GJL, 2026 WL 1156075, at *5 (W.D. Wash. Apr. 29, 2026). As such, the Court concludes that prudential exhaustion is not required in these circumstances.

The Court further finds that, even if exhaustion were required, waiver is appropriate based on at least one of the factors set forth in *Laing v. Ashcroft*, 370 F.3d 994 (9th Cir. 2004). Specifically, Petitioner has shown that "irreparable injury would result if [he] were to continue in immigration detention while pursuing administrative remedies through the BIA." *Soto Gimenez*, 2026 WL 1156075, at *5; Dkt. # 9 at 6. *See also Scott v. Wamsley*, Case No. 2:25-cv-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025) ("Courts in this Circuit have regularly waived exhaustion requirements for noncitizens who face 'irreparable injury' from being detained for 'months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal."). Petitioner states that he is an "active caregiver and source of support for his children," including a minor daughter with significant health conditions. Dkt. # 1 at 5. The Government does not directly dispute this submission, *see generally* Dkt. # 5, and courts have waived the exhaustion requirement based on similar circumstances. *See Soto*

*Gimenez*, 2026 WL 1156075, at *5–6. Accordingly, the Court finds that "Petitioner's uncontested factual submissions are sufficient to show irreparable harm and warrant waiver of the exhaustion requirement." *Id.* at *6 (citation omitted).

iii. The IJ's flight risk finding violated due process.

At Petitioner's January 13, 2026 bond hearing, the IJ found that Petitioner was a flight risk and denied bond. *See* Dkt. # 7-15 (audio recording of January 13, 2026 hearing). Petitioner challenges the IJ's finding as constitutionally inadequate, arguing that "the record affirmatively contradicts the finding of flight risk" and that the determination "disregards Petitioner's history of cooperation." Dkt. # 9 at 5.

In determining whether a noncitizen poses a risk of flight, an IJ weighs nine factors, pursuant to BIA precedent. *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *see also Martinez*, 124 F.4th at 783. The nine *Guerra* factors that an IJ "may" consider "include any or all of the following;"

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Martinez*, 124 F.4th at 783 (citing *Guerra*, 24 I. & N. Dec. at 40).

A federal court's review of an IJ's flight risk determination is for abuse of discretion. *Id.* at 779, 784–85. When assessing a flight risk finding for abuse of determination, the court must limit its review to whether the IJ applied the correct legal standard, and may not reweigh evidence. *Id.* at 785.

Based on the record before the Court,[4] the Court finds that the IJ abused its discretion in determining that Petitioner poses a flight risk. Immediately before announcing her determination, the IJ commented: "Well, [Petitioner] does have a prosecution for an illegal reentry. So, he does have a conviction." Dkt. # 7-15. The IJ then found that, "[g]iven all of the evidence of record," the Government had met its burden to show that Petitioner is a flight risk, and denied bond or conditional release in light of Petitioner's "extreme immigration history." *Id.* The IJ therefore appears to have principally relied on the sixth and seventh *Guerra* factors, which respectively contemplate consideration of the noncitizen's criminal and immigration history. *Guerra*, 24 I. & N. Dec. at 40.

The Court begins its review with the IJ's application of the sixth *Guerra* factor: "the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Id.* As relevant to this factor, the IJ found that Petitioner had a "conviction" for illegal reentry. Dkt. # 7-15. The record, however, is devoid of any mention of a conviction for this charge—or, indeed, *any* criminal conviction. To the contrary, the evidence provided to the IJ by DHS indicates that Petitioner was "charged" for 8 U.S.C. § 1326(B)(1) "REENTRY OF REMOVED," with "[n]o disposition." Dkt. # 7-9 at 4. The record elsewhere variously provides: "Subject has no criminal history"; "No criminal history found"; and "No Crimes selected for inclusion on the I-213" alongside a negative NCIC records check. Dkt. # 7-6 at 3, 5 (November 25, 2020 Form I-213); Dkt. # 7-9 at 3 (July 8, 2025 Form I-213). The IJ's comment that

[4] The Court conducted a preliminary review of the parties' submissions, including the audio recording of the January 13, 2026 bond hearing submitted by the Government at which the IJ found that Petitioner posed a flight risk on the basis of his criminal "conviction" and "extreme" immigration history. Dkt. # 7-15. Based on the Court's review, on May 7, 2026, the Court ordered the parties to produce the evidence submitted to the IJ in connection with the bond hearing. Dkt. # 10. The parties complied with the Order and produced under seal the exhibits filed in connection with the bond hearing. Dkt. ## 11–12. The discussion and findings in this Order are based on the Court's review of the parties' initial submissions, as well as the supplemental submissions made in response to the Court's May 7, 2026 production order.

Petitioner had a "conviction" for illegal reentry is flatly contradicted by the record, and "[t]here cannot be a correct application of a standard to a set of facts when the facts relied on are incorrect." *K.G.M.Q. v. Bondi*, No. 2:26-CV-00506-TL, 2026 WL 962609, at *11 (W.D. Wash. Apr. 9, 2026). Accordingly, the Court finds that the IJ abused her discretion in her application of the sixth *Guerra* factor. *Id.* (concluding that IJ's "dangerousness" finding resulting in bond denial was legally erroneous in part because IJ had misconstrued alleged "violation" as a "conviction").

In characterizing Petitioner's immigration history as "extreme," the IJ appears to have also relied on the seventh *Guerra* factor: "the [noncitizen]'s history of immigration violations." *Guerra*, 24 I. & N. Dec. at 40. However, the IJ failed to explain why Petitioner's immigration history "established flight risk or how [it] outweighed the significant evidence showing Petitioner is fixed and stable with his family in his community." *Soriano*, 2026 WL 969764, at *5. This case bears strong similarities to the facts considered in *Soriano*: while Petitioner does have a record of unlawful reentry, he also presented evidence of strong familial and community ties to the United States, a minor daughter with significant health issues for whom he is an active caregiver, a history of stable employment, and no history of failure to appear or otherwise comply with ICE requirements. *See* Dkt. # 7-15; Dkt. # 12-7 at 4–9, 15–21, 25–42; *see Soriano*, 2026 WL 969764, at *5.

Unlike the petitioner in *Soriano*, who had only one prior unauthorized entry, Petitioner has multiple reentries following a removal order—a fact highlighted by government counsel during the bond hearing. Dkt. # 7-15 (government counsel states that Petitioner was "removed three times" in 2009). This likely contributed to IJ's characterization of Petitioner's immigration history as "extreme" and "extensive." *Id.* Troublingly, however, there is some evidence in the record that Petitioner's three removals to Mexico in 2009 were wrongfully effectuated. The Form I-213 prepared in connection with Petitioner's July 2025 re-detention indicates that, during Petitioner's encounter with

ERO on July 29, 2009, Petitioner claimed fear of return to Mexico, but that USCIS never completed adjudication of Petitioner's reasonable fear claim. Dkt. # 12-8 at 4. The IJ's August 12, 2025 order concurring in USCIS's negative fear findings [redacted] *See* Dkt. # 12-8 at 4, 14.

Petitioner's subsequent removals to Mexico on August 5, 2009, September 1, 2009, and September 4, 2009, which the record suggests occurred without completion of the reasonable fear process, may therefore have violated binding federal regulations and due process. *See* 8 C.F.R. §§ 208.31(a)-(c); 241.8(e) (outlining required referral and reasonable fear process); *id.* § 241.8(f) (noting that "[e]xecution" of any "reinstated order of removal" must "be administered in accordance with [Part 241 of C.F.R. Title 8]."); *see also Najjar v. Lynch*, 630 F. App'x 724, 724 (9th Cir. 2016)) ("The Ninth Circuit has recognized that due process is violated where the government executes removal without affording an individual a fair opportunity to present claims related to the designated country of removal."); *Garrido v. Noem*, No. 5:26-CV-01282-AB-AJR, 2026 WL 795477, at *3, 5 (C.D. Cal. Mar. 19, 2026) (granting emergency relief based on government's failure to refer petitioner for a reasonable fear interview and noting that the "regulatory obligations governing fear-based claims" are mandatory, not discretionary). To be clear, in making these observations, the Court reaches no conclusion as to the issue of whether Petitioner was, in fact, wrongfully removed to Mexico in 2009, as that question is not before the Court. However, the Court does find relevant the fact that, in assessing Petitioner's immigration history as a whole, the IJ does not appear to have considered the context of Petitioner's successive reentries, which the record suggests occurred immediately after making an unadjudicated fear claim.

Even if the foregoing issues relating to Petitioner's prior removals are wholly disregarded, the fact remains that Petitioner's most recent reentry after removal occurred in 2009, nearly 17 years ago. Dkt. # 1 at 3. The IJ provides no explanation for why this

conduct would "motivate Petitioner to uproot his family from his community (or abandon his family) to avoid immigration officials and flee" rather than "appear in immigration court to pursue claims for relief from removal proceedings." *Soriano*, 2026 WL 969764, at *5–6. The IJ's conclusion that these unlawful entries from nearly two decades ago, without strong evidence of any "criminal history or any history of failing to appear, automatically weighs in favor of finding flight risk lacks any objective rationale." *Id.* at *5. The Court therefore finds that the IJ abused her discretion in applying the seventh *Guerra* factor.

Accordingly, the IJ's flight risk determination was legally erroneous, and does not provide an independent basis for Petitioner's detention.

**C. The appropriate remedy is immediate release.**

Having determined that Petitioner was re-detained without due process, the Court considers the appropriate remedy. Where, as here, a petitioner was re-detained without notice or a pre-deprivation hearing in violation of the Due Process Clause, the detention is "unlawful from its inception and typically requires immediate release." *K.G.M.Q.*, 2026 WL 962609, at *12 (citing *Ortiz v. Hermosillo*, No. 2:26-CV-00384-TL, 2026 WL 607672, at *5 (W.D. Wash. Mar. 4, 2026); *G.S. v. Hermosillo*, No. C25-2704 TSZ, 2026 WL 179962, at *3 (W.D. Wash. Jan. 22, 2026)). While an IJ's subsequent flight risk finding may "create an additional basis for detention (rendering detention lawful and a habeas remedy unavailable)," this only occurs if the finding is "valid as a matter of law." *Id.* (citing *Singh v. Noem*, No. 2:26-CV-00304-GJL, 2026 WL 482389, at *3 (W.D. Wash. Feb. 20, 2026)). Here, as discussed, the IJ's consideration of the record before her was legally erroneous. Accordingly, Petitioner remains "positioned as he was before his bond hearing—deprived of liberty without due process, with no lawful basis for his detention." *Id.* Under these circumstances, the Court concludes that the appropriate remedy is immediate release.

**D. The Court need not reach Petitioner's other claims.**

In addition to his *Mathews* claim, Petitioner asserts that his detention has become prolonged, and that his continued detention is not justified as his removal is "not reasonably foreseeable due to the stay of removal and pending appellate proceedings." Dkt. # 1 at 10 (citing *Zadvydas*, 533 U.S. at 701). Because the Court concludes that Petitioner's detention violates the Due Process Clause and is therefore unlawful from its inception, the Court need not resolve Petitioner's *Zadvydas* claim.

**E. The Court grants the parties' Motion to Seal, but directs the Government to file properly redacted versions of previously submitted exhibits.**

In support of their Response to the Petition, the Government submitted evidence in this case from Petitioner's immigration records, including several Form I-213s and the IJ's August 12, 2025 order concurring in USCIS' negative reasonable fear determination. Dkt. ## 7-6, 7-9, 7-13. The Government's declaration attaching this evidence provides that "[p]ersonally identifiable information has been redacted from all exhibits pursuant to Fed. R. Civ. P. 5.2." Dkt. # 7 at 1 n.2. However, the Government's supplemental filing, made in compliance with the Court's May 7, 2026 order, contains sealed but unredacted copies of the same documents, which make clear that the Government's initially-filed exhibits were improperly over-redacted. *See* Dkt. # 12-8. Specifically, contrary to its representation to the Court that only "personally identifiable information" was redacted from the initial records, the Government appears to have redacted material information relating to Petitioner's previous claims of fear. *Compare* Dkt. # 7-6 at 5 and Dkt. # 7-9 at 3–4 *with* Dkt. # 12-8 at 4–5, 10.

Alarmingly, the Government's redactions obscured the fact that Petitioner claimed fear not only in November 2020, but as early as July 2009,[5] and was subsequently *removed to Mexico* on three separate occasions despite USCIS' failure to adjudicate his fear claim. *Compare* Dkt. # 7-9 at 3 *with* Dkt. # 12-8 at 4; *see also* Dkt. # 7-9 at 4. In fact, *nowhere*

[5] The Government did not submit any Form I-213 prepared at the time of Petitioner's July 29, 2009 arrest.

in Respondent's initial submission is the 2009 fear claim referenced. To the contrary, Respondent's submission exclusively references only the November 2020 fear claim, and misleadingly suggests that this was the unadjudicated claim ERO discovered and attempted to promptly rectify[6] during Petitioner's July 2025 check-in. *See* Dkt. # 5 at 4–5 (acknowledging that Petitioner "claimed fear of return to Mexico" during his November 2020 encounter and noting that "ICE confirmed that USCIS had not made a fear determination" during the July 2025 check-in, but omitting Petitioner's July 2009 fear claim); Dkt. # 6 ¶¶ 7 (declaration from Deportation Officer omitting reference to fear claim in description of July 29, 2009 ERO encounter), 11 (acknowledging fear claim during November 25, 2020 encounter), 13 (noting that, during Petitioner's July 2025 appointment, "[w]hile running checks, ERO found that [USCIS] had not completed reasonable fear adjudication for Petitioner as he had previously claimed fear of returning to Mexico."). Respondent additionally redacted the portion of the IJ's August 2025 order [redacted] Dkt. # 7-13 at 2–3.

Again, in making these observations about Petitioner's prior fear claims, the Court reaches no conclusion as to the issue of whether Petitioner was, in fact, wrongfully removed to Mexico in 2009. However, the multiplicity of serious errors in this case raises significant questions regarding the legitimacy of the agency's original determinations, and suggests an egregious and repeated disregard for the protections of due process. Having a complete and accurate picture of a petitioner's immigration history is critical to this Court's ability to accurately assess the claims set forth in a habeas petition. This is especially true when the Government opposes habeas relief on the basis of a bond denial premised on the

[6] The applicable regulations provide that a noncitizen shall be "immediately" referred to an asylum officer for the reasonable fear interview, and that, absent "exceptional circumstances", the reasonable fear determination will be conducted within 10 days of the referral. 8 C.F.R. §§ 208.31(b), 241.8(e).

petitioner's immigration record. Were it not for the Court's May 7, 2026 order instructing the parties to file the complete set of records provided to the Tacoma Immigration Court, however, this information would have remained hidden.

The Court is sensitive to the need to protect sensitive information in immigration proceedings. However, apart from a few redactions of personally identifiable information, the Government's substantive redactions in this case appear to be confined to the issue of Petitioner's prior fear claims. The Court identifies no rational basis for the manner in which the records in this case were redacted, and the Government's submissions provide no adequate explanation. At best, these overbroad redactions inadvertently resulted in a misleading and unsupported record in this case, undermining the Court's ability to fully consider the merits of the Petition. At worst, the Government's conduct suggests an intentional effort to conceal potentially serious past agency errors in the adjudication of Petitioner's removal proceedings. In either case, the Court has no tolerance for this conduct, which departs from the established standards expected of Government counsel and all other practitioners in federal court. This Court has reviewed and adjudicated numerous habeas petitions, and is unaware of any circumstances presenting the combination of grave errors and misrepresentations present in this case. The Court accordingly reminds the Government of its duty of candor to the Court, and warns counsel that similar conduct may result in sanctions in the future.

Based on the foregoing, the Court orders the Government to file revised copies of Petitioner's November 25, 2020 and July 8, 2025 Form I-213s and the IJ's August 2025 order. *See* Dkt. ## 7-6, 7-9, 7-13. Redactions applied to these documents must be limited exclusively to personally identifiable information as represented in the declaration of counsel and in accordance with the Local Civil Rules. *See* Dkt. # 7 at 1 n.2; Local Rules W.D. Wash. LCR 5.2(a), (c). The revised filings will remain restricted to court users, case participants, and public terminals. Any party with objections to this instruction is

instructed to file a motion setting forth those objections within five (5) days of the entry of this Order. The Motion to Seal is otherwise granted pursuant to LCR 5.2(c). Dkt. # 11.

## V. CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner Nolberto Brambila Sanchez's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court also **GRANTS** the Motion to Seal, subject to Respondent's revisions to the redacted documents identified in this Order. Dkt. # 11. The Court **ORDERS** that Respondent:

(1) Shall immediately release Petitioner Nolberto Brambila Sanchez from custody;

(2) Shall file with the Court a notice within **two (2) business days** confirming Mr. Brambila Sanchez's release;

(3) Shall not re-detain Mr. Brambila Sanchez unless and until Respondent provides him with **ten (10) days' written notice** and a meaningful opportunity to be heard before an immigration judge to determine whether detention is appropriate, and unless Mr. Brambila Sanchez is afforded the procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i) and all other applicable regulations; and

(4) Shall file revised versions of the documents identified in this Order, with improper redactions removed, within **ten (10) days** of the entry of this Order. *See* Dkt. ## 7-6, 7-9, 7-13. Any party with objections to this instruction is instructed to file a motion setting forth those objections within **five (5) days** of the entry of this Order.

DATED this 15th day of May, 2026.

The Honorable Richard A. Jones
United States District Judge